UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHERYL SMITH,

Plaintiff,

v.

FRESNO COMMUNITY HOSPITAL AND MEDICAL CENTER, et al.,

Defendants.

No. 1:20-CV-01616-ADA-BAM

ORDER GRANTING DEFENDANT FRESNO COMMUNITY HOSPITAL AND MEDICAL CENTER'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND DISMISSING THE ENTIRE ACTION PURSUANT TO 28 U.S.C. § 1367(c) AND FED. R. CIV. P. 41(b)

(ECF No. 27)

This matter is before the Court on Defendant Fresno Community Hospital and Medical Center dba Clovis Community Medical Center's ("Defendant" or "FCHMC dba CCMC") motion to dismiss. (ECF No. 27.) For the reasons explained below, the Court will grant Defendant's motion to dismiss and will dismiss, without prejudice, the remaining state law claims, pursuant to 28 U.S.C. § 1367(c)(3) and Rule 41(b) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

### A. Procedural Background

This action arises from the alleged wrongful death of Mr. Bryson Ferguson ("decedent"), caused by allegedly negligent medical treatment that failed to detect what proved to be a fatal underlying condition. Decedent's mother is Plaintiff, and she is the legal representative of his estate. (ECF No. 23 at 1.) On November 13, 2020, Plaintiff filed her complaint as the successor

in interest to the Estate of Bryson Ferguson. (ECF No. 1.) On December 7, 2020, Defendant filed a motion to dismiss, and Plaintiff filed an opposition on January 5, 2021. (ECF Nos. 10, 12.) After Defendant filed its reply on January 12, 2021, the Court granted Defendant's motion to dismiss with leave to amend on July 20, 2021. (ECF Nos. 15, 22.) On August 19, 2021, Plaintiff filed her first amended complaint ("FAC"). (ECF No. 23.) The FAC asserts causes of action against five separate defendants: FCHMC dba CCMC, Dr. Scott Ford, Chiropractic Health Center/Accident Recovery Center, Reza Shakeri, and John Ferguson. (*Id.* at 2-3.) Plaintiff asserts claims for medical negligence and wrongful death. (*Id.* at 8-10.) Plaintiff also brings claims for violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA") and California Health and Safety Code § 1317. (*Id.* at 10-12.)

On September 2, 2021, FCHMC filed a motion to dismiss Plaintiff's EMTALA claim pursuant to Rule 12(b)(6) and argued that, in the absence of that claim, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims brought against FCHMC. (ECF No. 27-1 at 1-2.) On September 21, 2021, Plaintiff filed an opposition, and Defendant filed a reply on September 7, 2021. (ECF Nos. 31, 32.)

**B. Factual Background**

The following facts are discernable from Plaintiff's FAC. (ECF No. 23.) Defendant FCHMC owns CCMC. (*Id.* at ¶ 4.) On October 26, 2019, decedent was in a car accident which resulted in injuries to his left shoulder, arm, side, ankle, and the right side of his head. (*Id.* at ¶ 10.) He lost consciousness after the collision for some time and was in an altered mental state when he regained consciousness. (*Id.* at ¶ 14.) CCMC had knowledge of the decedent's medical history of epilepsy and seizures. (*Id.*) The decedent complained to the nurses and doctors of a headache and pain on the right side of his face. (*Id.*)

Dr. Ford treated the decedent while at CCMC but failed to take proper precautions to evaluate decedent's neurological condition. (*Id.* at ¶¶ 16, 17.) Medical research and literature, which Dr. Ford should have been aware of, documents the heightened risks that epileptics are prone to suffer following a head injury, yet no special attention was given to decedent's complaints. (*Id.* at ¶ 16.) Decedent was discharged from the hospital later that day on October 26, 2019, when Dr.

Ford considered him to be stable and instructed him to consult a doctor if any symptoms developed following his discharge from the hospital. (*Id.*at ¶ 18.) Decedent followed up twice with a medical provider after the accident. (*Id.* at ¶ 20.) On November 21, 2019, decedent died due to a breakthrough seizure. (*Id.* at ¶¶ 3, 22.) Plaintiff alleges the decedent received inappropriate medical emergency screening compared to what similarly situated patients in his position have received and had he received the medically appropriate screening, the decedent's life would not have ended when it did. (*Id.* at ¶ 24.)

## II. LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III. DISCUSSION

### 1. Plaintiff fails to allege a plausible failure to screen claim under EMTALA.

To state a claim that Defendant failed to properly screen a patient under requirements of

EMTALA, Plaintiff must allege that: "(1) the patient had an emergency medical condition; and (2) the hospital did not screen the patient in the same way it screens other patients presenting with similar symptoms." *McClure v. Parvis*, 294 F.Supp.3d 318, 324 (E.D Pa. 2018). The screening is meant to determine "whether or not an emergency medical condition . . . exists." *Jackson v. East Bay Hosp.*, 246 F.3d 1248, 1254 (9th Cir. 2001). EMTALA defines an emergency medical condition as follows:

> A medical condition manifesting itself by acute symptoms (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in (i) placing the health of the individual . . . in serious jeopardy, (ii) serious impairment of bodily functions, or (iii) serious dysfunction of any bodily organ or part . . . .

42 U.S.C. § 1395dd.

In FCHMC dba CCMC's second motion to dismiss, Defendant argues that Plaintiff cannot establish a plausible EMTALA failure to screen claim. (ECF No. 27 at 5.) Defendant concludes that the FAC insufficiently shows that decedent had an "emergency medical condition" under EMTALA, highlighting the following allegations concerning decedent's hospitalization: "[Decedent] did not receive a screening examination that addressed his *probable* post-collision neurological symptoms as compared to pertinent emergency policies and protocols in effect at the time . . . . [Decedent] was also exhibiting symptoms clearly *suggestive* of a life-threatening neurological condition." (ECF No. 23 at ¶ ¶ 38, 40 (emphasis added).) Defendant further notes that no facts establish that decedent was suffering from an emergency medical condition in the hospital between the time of his discharge and his death. (ECF No. 27 at 6.) Rather, the facts indicate that decedent had a non-serious, non-emergency diagnosis at the time of discharge from Defendant. (*Id.*)

Defendant largely relies on *Eberhardt v. City of Los Angeles*, 62 F.3d 1253 (9th Cir. 1995), to argue that Plaintiff fails to allege an emergency medical condition under EMTALA. There, the court held that the hospital did not violate EMTALA when a police officer fatally shot the patient thirty hours after discharge because the time lapse suggests that the patient's possible suicidal condition developed after release. *Id.* at 1258. Even though the hospital had knowledge of the patient's psychological history, suggesting a suicidal disposition, the patient had reduced the

likelihood of any emergency medical condition when he signed the patient instruction sheet, which indicated his agreement to seek follow-up care at a treatment center. *Id.* The court reasoned that "EMTALA does not require physicians to detect medical conditions that are *not* manifested by acute and severe symptoms, nor those that do not require immediate medical attention to prevent serious bodily injury." *Id.* at 1257. The court stated that the hospital's failure to detect the decedent's alleged suicidal tendency may be actionable under state medical malpractice law, but not under EMTALA. *Id.* at 1258.

Similarly, decedent's alleged neurological condition related to the breakthrough seizure that caused his death appears to not have been an emergency medical condition that required immediate medical attention while under Defendant's care, given the time lapse between his discharge from Defendant and his death around 25 days later. The time lapse suggests that decedent's alleged neurological condition arose well after he had been discharged, and that he did not require immediate treatment for the condition while he was in the hospital. Decedent's attending physician instructed him to follow up with a physician or return to CCMC if symptoms developed like the physician in the *Eberhardt* case. (ECF No. 23 at ¶ 18.) Therefore, the Court finds that Plaintiff fails to allege adequately an emergency medical condition for his EMTALA failure to screen claim.

Defendant further argues that aftercare instructions and follow-up policies are not screening policies under EMTALA. (ECF No. 27 at 9.) The court in *Guzman v. Memorial Hermann Hospital System*, 637 F.Supp.2d 464 (S.D. Tex. 2009), held that aftercare and follow-up policy is not an EMTALA screening policy. *Id.* at 497. The court reasoned that aftercare and follow-up policy is not used to determine the existence of an emergency medical condition during the screening process. *Id.* at 498. Rather, the policy exists to help physicians meet the standard of care, which is an element of a state malpractice claim, not an EMTALA claim. *Id.* Therefore, Defendant contends that aftercare instructions and follow-up policies are not screening policies under EMTALA, undermining Plaintiff's argument that Defendant failing to provide concussion aftercare instructions constitutes a failure to screen.

In response, Plaintiff argues that inappropriate medical care of an emergency patient may constitute both a medical malpractice and an EMTALA claim. (ECF No. 31 at 8. (citing *Gatewood*

*v. Wash. Healthcare Corp.*, 933 F.2d 1037, 1041 (D.C. Cir. 1991))). Plaintiff also argues that a mere cursory screening does not comply with EMTALA's appropriate screening requirement, citing to *Correa v. Hospital San Francisco*, 69 F.3d 1184, 1194-1196 (1st Cir. 1995). (ECF No. 31 at 10.) Plaintiff contends that an appropriate screening examination under EMTALA must be tailored to detect whether a patient's presenting symptoms indicate an emergency. (*Id.* (citing to *Jackson v. E. Bay Hosp.*, 246 F.3d 1248, 1254-56 (9th Cir. 2001))).

In *Gatewood*, the court held that the malpractice or negligence standard cannot be incorporated into 28 U.S.C. § 1395dd, the statutory authority for EMTALA actions. *Gatewood*, 933 F.2d at 1041. The court reasoned that although there may be some areas of overlap between federal and state causes of action, "*most* questions related to the adequacy of a hospital's standard screening and diagnostic procedures must remain the *exclusive* province of local negligence law." *Id.* (emphasis added).

Like *Gatewood*, the Court finds that Plaintiff's EMTALA allegations overlap with her state causes of actions, and Plaintiff's allegations more adequately address state causes of actions than the EMTALA cause of action. Plaintiff alleges that despite decedent's documented epilepsy, history of seizures, severity of the accident, and his loss of consciousness, "Defendant failed to examine, diagnose, and treat [decedent's] head and brain trauma post-collision." (ECF No. 23 at ¶ 16.) Plaintiff further alleges that, in violation of "the applicable standards of care," "[Decedent's] staff health care providers should have consulted a neurology specialist regarding [decedent's] symptoms, and they also should have ordered . . . imaging studies that would have enabled them to ascertain the post-traumatic condition of his brain." (*Id.* at ¶ 17.) These allegations are not attributable to Plaintiff's failure to screen claim because Defendant, based on the factual allegations, did, in fact, screen decedent. It appears, instead, that Plaintiff takes issue with the adequacy and standard of the screening, which is governed by state law, not EMTALA.

In *Correa*, the court held that EMTALA does not create a cause of action for medical malpractice. *Correa*, 69 F.3d at 1192. "[A] refusal to follow regular screening procedures in a particular instance contravenes the statute, . . . , but faulty screening, in a particular case, as opposed to disparate screening or refusing to screen at all, does not contravene the statute." *Id.* at 1192-93.

In *Jackson*, the court held that providing medically inadequate screening examinations and failing to order additional tests does not violate EMTALA's screening requirements. *Jackson*, 246 F.3d at 1255. The court held that a hospital only must provide a screening examination that is comparable to that offered to other patients with similar symptoms. *Id.* (citing *Marshall v. E. Carroll Parish Hosp. Serv.*, 134 F.3d 319, 323-24 (5th Cir. 1998) ("[A] treating physician's failure to appreciate the extent of the patient's injury or illness . . . may constitute negligence or malpractice, but cannot support an EMTALA claim for inappropriate screening . . . ."); *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1139 (8th Cir. 1996) (holding that instances of negligence in the EMTALA screening or diagnostic process, or of mere faulty screening, are not actionable under EMTALA)). The *Jackson* court recognized that EMTALA does not require a hospital to ensure medically adequate examinations and that, instead, the act's purpose was to limit hospitals from refusing to treat patients who were not covered by insurance or who could not otherwise pay for medical services. *Jackson*, 246 F.3d at 1256; *see also Lopez v. Contra Costa Reg'l Med. Ctr.*, 903 F.Supp.2d 835, 838 (N.D. Cal. 2012) ("Congress passed EMTALA, also known as the 'Patient Anti-Dumping Act,' to prohibit hospital emergency rooms from refusing to treat indigent and uninsured patients or transferring patients to other hospitals without first stabilizing their condition.").

Similar to *Correa* and *Jackson*, the Court finds that Plaintiff alleges a faulty screening claim, rather than a refusal to follow EMTALA screening procedure claim. As noted above, a faulty screening claim does not contravene EMTALA. The decedent was ultimately discharged with non-serious diagnoses, prescribed pain relievers, and instructed to follow up with a physician or return to Defendant if symptoms developed. (ECF No. 23 at ¶ 18.) Plaintiff does not plead that Defendant failed to screen decedent under EMTALA. Instead, Plaintiff pleads that the screening was inadequate, which does not violate EMTALA according to Ninth Circuit precedent. *See Jackson*, 246 F.3d at 1255. The decedent, under Defendant's instruction, even followed up with a medical provider twice after the motor vehicle accident. (*Id.* at ¶ 19.) The Court finds that Defendant did not refuse to treat and screen decedent, which aligns with the purpose of EMTALA. As Plaintiff pleads, the Court finds no plausible EMTALA claim based on failure to screen.

**2. Plaintiff fails to allege a plausible disparate treatment claim under EMTALA.**

In the previous order granting Defendant's first motion to dismiss, the Court separately addressed Plaintiff's disparate treatment claim under EMTALA. (ECF No. 22 at 10.) The Court found that Plaintiff's allegations were conclusory and did not provide any facts supporting or explaining in what way decedent received different treatment from other similarly situated patients. (*Id.*) Based on Plaintiff's original complaint, Plaintiff simply alleged no facts which if proven would demonstrate that another patient in decedent's situation or presenting his symptoms would have received different treatment or that the hospital violated its own screening procedures in connection with his treatment. (*Id.*)

In the second motion to dismiss, Defendant argues that Plaintiff's allegations still fail to establish a claim for disparate screening. (ECF No. 27 at 7.) Plaintiff alleges that CCMC had an emergency protocol for patients who had a history of a motor vehicle accident that resulted in a loss of consciousness, which requires all patients to receive a neurological assessment including brain imaging. (ECF No. 23 at ¶ 19.) Plaintiff also alleges that similarly situated patients are supposed to receive concussion aftercare instructions and instructions to follow-up with another provider promptly if symptoms worsen or persist. (*Id.*) Defendant argues that Plaintiff conflates the decedent's history of a motor vehicle accident with a loss of consciousness at the scene of the accident and his history of seizures with "symptoms" under EMTALA. (ECF No. 27 at 8.) In other words, Defendant argues that decedent's injuries and medical history are not symptoms for purposes of EMTALA. (*Id.* (citing to *Reynolds v. Maine General Health*, 218 F.3d 78, 81-82 (1st Cir 2000))).

In *Reynolds*, the court held that the meaning of "symptom," does not include one's family history of a certain medical condition, because the statutory text or purpose of EMTALA and case law do not support such a meaning of "symptom." *Reynolds*¸ 218 F.3d at 81. The symptoms must be acute such that the absence of *immediate* medical attention could result in danger to the health of the patient. 42 U.S.C. § 1395dd (emphasis added). The decedent was in a car crash, and he was admitted to the defendant hospital to address various injuries, including several fractures of bones. *Reynolds*, 218 F.3d at 79. The defendant hospital's physicians determined that the decedent

required surgery and conducted multiple surgeries on the decedent. *Id.* at 80. Almost two weeks later, after his discharge, the decedent had died of a massive pulmonary embolism that emanated from deep veinous thrombosis ("DVT") at the fracture site of his right leg, which had not been an acute symptom at the time of the initial screening after the car accident. *Id.* The plaintiff argued that the defendant failed to screen for DVT and failed to stabilize the decedent for DVT prior to discharge, violating EMTALA. *Id.* The court disagreed with the plaintiff because the court found that the decedent receiving treatment is a prima facie showing that EMTALA was satisfied. *Id.* at 83. The court further argues that to interpret EMTALA to encompass non-acute symptoms that do not require immediate medical attention is the plaintiff's attempt to bring a malpractice standard into the interpretation and application of the statute. *Id.* at 84. Therefore, Defendant argues that "symptoms," for the purposes of the screening procedure for an emergency medical condition, does not include one's family history of a certain medical condition or other similar histories that may be aggravated by the emergency medical condition.

Similarly, the Court finds that Defendant did not need to consider decedent's history to screen for an emergency medical condition during his hospitalization because medical histories are not acute symptoms that require immediate medical attention. As a result, Plaintiff does not allege that Defendant disparately treated Plaintiff in comparison to other similarly situated patients. Plaintiff's opposition is also silent on the issue of disparate treatment like her opposition to the first motion to dismiss. (*See* ECF Nos. 12, 31.) Therefore, the Court finds that Plaintiff fails to allege a plausible disparate treatment claim, warranting dismissal of the EMTALA claim.

**3. Plaintiff fails to allege a plausible failure to stabilize claim under EMTALA.**

In this Court's order granting Defendant's first motion to dismiss, the Court held that Plaintiff had not alleged sufficient facts to show that Defendant failed to stabilize decedent's emergency. (ECF No. 22 at 8.) The Court found that Plaintiff provided no factual allegations explaining why or how the screening examination of decedent was cursory and not in line with pertinent emergency policies. (*Id.*) Furthermore, the Court noted that even if Defendant failed to properly diagnose decedent, it would not alone provide grounds for finding a violation of EMTALA. (*Id.* (citing *Jackson*, 246 F.3d at 1257)).

In its second motion to dismiss, Defendant argues that because Plaintiff still fails to allege decedent's emergency medical condition under EMTALA, she also fails to trigger the duty to stabilize decedent. (ECF No. 27 at 10.) A hospital's duty to stabilize a patient pursuant to EMTALA arises only once the hospital detects an emergency medical condition. *Jackson*, 246 F.3d at 1254-55. Defendant emphasizes that Plaintiff must show that an emergency medical condition existed at the time of decedent's discharge. (ECF No. 27 at 10. (citing to *Reynolds v. MaineGeneral Health*, 218 F.3d 78, 85 (1st Cir. 2000))). Defendant notes that Plaintiff alleges that the hospital screened decedent and released him once he was deemed stable, suggesting no failure to stabilize on part of Defendant. (*Id.* (citing to ECF No. 23 at ¶ 18)). Defendant further argues that Plaintiff's contention that Defendant should have taken steps beyond what is required under EMTALA is a medical negligence claim, not a claim under EMTALA. (*Id.*)

In her opposition, Plaintiff states that "nowhere in either the original or First Amended Complaint is a stabilization claim even alleged," which suggests that Defendant did not fail to stabilize decedent. (*See* ECF No. 31 at 7 n.4.) Plaintiff further contends that the same reason for decedent's hospitalization does not need to be present at the time of the EMTALA violation. (*Id.* at 11.) Plaintiff argues that many cases have involved screening violations that led to the non-detection of a condition that led to other conditions that caused injury or death, citing to only one case's fact pattern and not the court's analysis. (*Id.* (citing *Hoffman v. Tonnemacher*, 593 F.3d 908, 910 (9th Cir. 2010))). In *Hoffman*, however, the court did not hold that the defendant hospital committed a screening violation under EMTALA. *Hoffman*, 593 F.3d at 909. Rather, the court held that the district court did not abuse its discretion when it entertained successive motions for summary judgment following a mistrial concerning an EMTALA claim. *Id.* In fact, Plaintiff fails to cite to any legal authority would support faulting Defendant with failing to screen or stabilize decedent's alleged emergency medical condition that led to his death 25 days after discharge from the hospital. Therefore, the Court dismisses Plaintiff's failure to stabilize claim.

**4. Plaintiff fails to allege plausible causation to establish liability under EMTALA.**

"Any individual who suffers personal harm as a *direct result* of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital,

obtain those damages available for personal injury . . . ." 42 U.S.C. § 1395dd(d)(2)(A) (emphasis added). In other words, Plaintiff must allege plausible causation between Defendant's alleged EMTALA violations and decedent's personal harm or death.

In the second motion to dismiss, Defendant argues that Plaintiff fails to allege that decedent's death or further injuries after the motor vehicle accident was a direct result of Defendant's failure to screen or stabilize before discharge. (ECF No. 27 at 11.) Furthermore, Defendant highlights that decedent's death certificate indicates that the cause of death is a "probable breakthrough seizure [sic]," but does not indicate that it occurred while decedent was in Defendant's emergency department following the motor vehicle accident on October 26, 2019.[1] (*Id.*) Overall, Defendant contends that decedent's fatal seizure did not occur until 25 days after discharge, which suggests that he did not need immediate treatment under EMTALA and his probable breakthrough seizure is not a direct result from Defendant's alleged EMTALA violations. (*Id.*)

In response, Plaintiff argues that the Court may not determine whether the FAC adequately alleges causation because the parties have not had the benefit of any discovery or expert testimony. Plaintiff relies on *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008). *In re Gilead* concerns a securities fraud action, where "loss causation" is an element of the claim therein. *In re Gilead*, 536 F.3d at 1055. However, "loss causation" is not the same as causation in the context of an EMTALA claim. To establish loss causation in a securities fraud action, the plaintiff must demonstrate a causal connection between the deceptive acts that form the basis for the securities fraud claim and the injury suffered by the plaintiff. *Id.* at 1055. For EMTALA claims, Plaintiff must demonstrate that the decedent's alleged personal harm or death must be a direct result

---

[1] Along with its motion to dismiss, Defendant files a request for judicial notice of decedent's death certificate. (*See* ECF No. 27-2.) Rule 201 of the Federal Rules of Evidence provides that the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b). A death certificate is a public record of which a court may take judicial notice. *People v. Terry*, 38 Cal.App.3d 432, 439 (1974) (citing *Ellenberger v. City of Oakland*, 76 Cal.App.2d 828 (1964)). The Court takes judicial notice of the decedent's death certificate.

of Defendant's violation of EMTALA. Therefore, the Court declines to apply the rationale in *In re Gilead* to this case.

Plaintiff further argues that an EMTALA screening violation occurs when Defendant fails to screen for an emergency condition that "*may* indicate an immediate and acute threat to life," rather than a harm that is, in fact, immediate at the time of hospitalization. (ECF No. 31 at 11. (citing to *Byrne v. Cleveland Clinic*, 684 F.Supp.2d 641, 652 (E.D. Pa. 2010) (citing *Correa*, 69 F.3d at 1193))). In *Byrne*, the court found that lengthy emergency room delays give rise to an EMTALA screening claim because so delayed or paltry screenings can constitute a denial of an appropriate medical screening examination. *Byrne*, 684 F.Supp.2d at 652. Here, there is no indication that Defendant was significantly delayed in attending to decedent because the motor vehicle accident occurred at or around 6:00 a.m. on October 26, 2019, and Defendant admitted decedent at approximately 7:11 a.m. (ECF No. 23 at ¶¶ 10-13.) As Plaintiff acknowledges in her FAC, decedent was in a stable condition when Defendant discharged him from the emergency department because he was not seizing at the time of discharge and decedent followed up with a medical provider twice after the incident. (*Id.* at ¶¶ 18, 20.) The decedent's breakthrough seizure did not occur until November 21, 2019, which was 25 days after his discharge from Defendant. (*Id.* at ¶ 3.) The Court finds that Plaintiff's allegations demonstrate that decedent's alleged neurological condition arose after he had been discharged. Consequently, Plaintiff pleads that decedent did not require immediate treatment for the alleged emergency medical condition while he was at the hospital. Therefore, the Court finds that Plaintiff fails to allege an EMTALA claim due to lack of causation.

**5. The Court denies Plaintiff leave to amend her complaint.**

Generally, "[c]ourts are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave should be granted with 'extreme liberality.'" *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009). There are several factors a district court considers when deciding whether to grant leave to amend, including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by previously allowed amendments, undue prejudice to the opposing party, and futility. *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020)

(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Of the *Foman* factors, the court should particularly consider prejudice to the opposing party. *Id.*; *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "[L]eave to amend should be denied when the plaintiff could not amend the complaint to state a viable claim without contradicting the complaint's original allegations." *B&G Foods N. Am., Inc. v. Embry*, 2:20-cv-00526-KJM-DB, 2022 WL 16702141, at *8 (E.D. Cal. Nov. 3, 2022) (citing *Garmon v. Cnty. of L.A.*, 828 F.3d 837, 846 (9th Cir. 2016)). Here, the Court finds that even if Plaintiff were to add more specificity to the factual allegations, the EMTALA claim could not be cured by amendment.

Applying the third and fifth *Foman* factors to this case, the Court finds that it would be futile to grant Plaintiff leave to amend her FAC. The Court granted Plaintiff leave to amend the original complaint, following the order granting Defendant's first motion to dismiss, and Plaintiff subsequently filed her FAC. Plaintiff submitted two substantially similar complaints alleging substantially similar theories and introducing no new theories, which suggests that Plaintiff had two chances to cure pre-existing deficiencies. *See Eminence Capital, LLC,* 316 F.3d at 1053. If granted leave to amend, the Court finds that Plaintiff may not add factual allegations to plead sufficiently her EMTALA claim. The Court highlights three specific findings, among others in this order, to demonstrate the futility of granting leave to amend. First, Plaintiff fails to allege an emergency medical condition, which is one of the essential elements of an EMTALA claim. The time lapse between decedent's discharge from Defendant on October 26, 2019, to his death on November 21, 2019, undermines the plausibility of direct causation between the alleged EMTALA violations and decedent's death and the plausibility an emergency medical condition based on acute symptoms. Plaintiff's alleged symptoms that decedent suffered, particularly his history of epilepsy and seizures, do not constitute acute or severe symptoms that attribute to an emergency medical condition. Second, the time lapse also indicates that if there was an emergency medical condition at the time of decedent's discharge, Defendant had stabilized such condition prior to discharge.[2]

[2] In her opposition to the second motion to dismiss, Plaintiff fails to address a multitude of Defendant's arguments, including the failure to stabilize claim, and lacks citations to legal authority to support the plausibility of her claims, further supporting the futility of granting leave to amend. (*See* ECF No. 31.)

Based on the aftercare instructions provided to decedent at discharge, decedent consulted with medical providers twice after discharge, further attenuating the plausibility of an emergency medical condition or an EMTALA violation. Third, Plaintiff's allegations of inadequacy or standard of care violations during Defendant's screening procedures of decedent presents a medical negligence claim, not an EMTALA claim. Even if Plaintiff were granted leave to amend, any additional allegations are likely to contradict the FAC.

Finally, considering the first and fourth *Foman* factors, the Court recognizes that this matter was filed more than two years ago, and that Defendant filed its second motion to dismiss in 2021. The substantial delay in this case has likely prejudiced both parties, but that delay is attributable to the Court alone. However, granting leave to amend would be futile given that Plaintiff cannot cure the deficiencies with respect to her EMTALA claim. Therefore, the Court denies Plaintiff leave to amend.

**6. The Court dismisses, without prejudice, the remaining state law claims.**

The Court may decline to exercise supplemental jurisdiction over a claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) *the district court has dismissed all claims over which it has original jurisdiction*, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c) (emphasis added). A court may decline to exercise supplemental jurisdiction over the remaining state law claims when the federal claim has been disposed of on the merits. *Baker v. Adventist Health, Inc.*, 260 F.3d 987, 997 (9th Cir. 2001) (holding that the district court did not abuse its discretion when it dismissed the remaining state law claims after deciding the federal EMTALA claim on its merits). According to Rule 41(b) of the Federal Rules of Civil Procedure, "[i]f the plaintiff fails . . . to comply with these rules . . . , a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." Fed. R. Civ. P. 41(b).

Here, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining

state law claims because the Court dismisses Plaintiff's EMTALA claim, which is the only claim over which it has original jurisdiction. Because Defendant moves for dismissal, the Court dismisses, without prejudice, the remaining state law claims based on 28 U.S.C. § 1367 and Rule 41(b).

## IV. CONCLUSION AND ORDER

Accordingly,

1. Defendant's motion to dismiss Claim 3, (ECF No. 27), is GRANTED;
2. Plaintiff is DENIED leave to amend her complaint;
3. The Court DISMISSES, without prejudice, the remaining state law claims; and
4. The Court of the Clerk is directed to close the case.

IT IS SO ORDERED.

Dated: March 7, 2023

UNITED STATES DISTRICT JUDGE